**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
GREENVILLE DIVISION**

**ARLENE ADELSHEIMER,** *Individually and
as Personal Representative on Behalf of the
Wrongful Death Beneficiaries of
PHILIP E. ADELSHEIMER, Deceased* **PLAINTIFF**

**v.** **CIVIL ACTION NO.: 4:22-CV-055-MPM-JMV**

**CARROLL COUNTY, MISSISSIPPI, ET AL.** **DEFENDANTS**

**ORDER DENYING MOTION TO COMPEL**

This matter is before the court on Plaintiff's Motion to Compel [107] filed on November 22, 2023. Therein, Plaintiff seeks production of certain supplementary responses from Defendants to interrogatories [18, 19, and 23] and requests for production [13 and 21]. The motion has been fully briefed, and the court, for the reasons explained below, finds the motion should be and is denied.

**Procedural Background**

Plaintiff, individually and as personal representative on behalf of the wrongful death beneficiaries of Philip E. Adelsheimer, filed her Complaint [1] on April 8, 2022, alleging 8th and 14th Amendment violations, pursuant to 42 U.S.C. § 1983, arising from the death by apparent suicide of Adelsheimer on June 18, 2020, while he was an inmate at Carroll Montgomery County/Regional Correctional Facility. It is alleged that at his death, Adelsheimer was in "administrative segregation," also known as "lockdown,"[1] where he had been housed for approximately three months without undergoing a mental exam as was allegedly required under

---

[1] The parties have referred to administrative segregation, protective custody, disciplinary detention, or management isolation collectively in this litigation as "lockdown." Accordingly, the court will hereafter do likewise.

the facility offender segregation policy. It is the court's understanding, on the other hand, that Defendant contends that while Adelsheimer was not afforded a mental exam in lockdown, it was due to the implementation of unavoidable COVID-related transfer restrictions in 2020 that made the conduct of such an evaluation not feasible.

After discovery was propounded by the Plaintiff, and consistent with the CMO requirements, on October 25, 2023, the Court held a telephonic discovery conference [98] with counsel to discuss several unresolved discovery disputes, including whether Plaintiff was entitled to the identification of all inmates in lockdown from June 18, 2017, to June 18, 2020 (approximately 3 years prior to Adelsheimer's death). Plaintiff maintained that once identified as having been placed in lockdown pre-COVID, she could then ascertain whether such inmates were in fact afforded mental evaluations, or whether, as she contends, even in the absence of COVID, the facility disregarded the alleged segregation policy requirement of a mental evaluation. In other words, she maintains that the assertion that Adelsheimer did not have a mental evaluation in lockdown due to COVID restrictions is merely a pretext.[2] At the court's suggestion during the conference, Defendant thereafter produced the identities of all individuals housed in lockdown for an 18-month period prior to June 18, 2020, rather than a three-year period, and supplemented its responses of certain other discovery requests. Finding the supplementation deficient in certain respects, Plaintiff subsequently filed her motion to compel [107]. In it, she seeks to compel Defendants to provide the following additional information:

(1) the identification of inmates assigned to lockdown at CMRCF for a period in excess of 30 days from June 18, 2017, to September 31, 2018 **(addressed in Interrogatory No. 18 and 19)**;

---

[2] The undersigned makes no comment on the admissibility at trial of evidence, if any, that pre-COVID inmates in lockdown were not afforded mental evaluations, if, in fact, COVID-related travel restrictions nevertheless made the performance of a mental evaluation of Adelsheimer unfeasible.

(2) mental health reports by a qualified health professional of all inmates in lockdown at CMRCF for 30 days or more from June 18, 2017, to June 18, 2020 **(addressed in Request No. 21)**; and

(3) Information and documentation about a prior suicide at CMRCF in administrative segregation **(addressed in Interrogatory No. 23 and Request No. 13)**.

Each topic, together with the reasons offered by Defendant in opposition to the motion to compel are discussed hereafter.

I. **THE IDENTIFICATION OF INMATES ASSIGNED TO LOCKDOWN FOR A PERIOD OF THIRTY DAYS OR MORE AT CMRCF FROM JUNE 18, 2017, TO SEPTEMBER 31, 2018 (covered by Interrogatory No. 18 and 19).**

In opposition to the motion to compel on this issue, Defendants raise only the argument that they have complied, in full, with the court's suggestion, provided during the telephonic conference [98], that the requested information be provided for an 18-month period rather than the requested three-year period.[3]

The court finds Defendants' assertion that it has fully exhausted its discovery obligation by having complied with the Court's initial suggestion to provide the responsive information for only an 18-month period, to be without merit because while it is accurate that the court made this suggestion and Defendant performed in accordance, it is equally accurate that in doing so the Court expressly left open the potential for further production beyond the 18 months should the circumstances, based on the initial production, warrant it. And, Plaintiff argues that because the initial search revealed that only one inmate during the initial 18-month period had been assigned

---

[3] By way of reply, Plaintiff notes that "Defendant failed to state that the Court also noted that Plaintiff possibly could be entitled to additional records for a longer period of time if sufficient records were not available during the 18-month period." *See* Pl.'s Reply [111] at 2.

to lockdown for 30 days or longer, a search for the same information for an additional 18 months pre-COVID is warranted.[4]

I find Plaintiff's motion to compel Defendants to produce the identification of inmates assigned to lockdown at CMRCF for a period in excess of 30 days from June 18, 2017 to September 30, 2018, to be reasonable in light of the paucity of sampling information derived from review of the initial 18-month period. However, I find that compelling Defendant to provide this additional information, is under the current circumstances of this case, not proportional thereto. In other words, this information, alone, does not make any issue relevant in the case more or less likely unless Plaintiff were entitled also to know which, if any, of such inmates were afforded a mental evaluation. But discovery in the case has closed and no such interrogatory is at issue before the Court. Rather, Plaintiff argues with respect thereto only that she is entitled to copies of all mental evaluations, if any, and as is discussed under issue II below, I find that contention to be entirely without merit. Of course, were the case in a posture to continue discovery—see discussion below—the further identification of persons in lockdown in excess of 30 days might not be a wasteful exercise.

II. **MENTAL HEALTH REPORTS BY A QUALIFIED HEALTH PROFESSIONAL OF ALL INMATES IN LOCKDOWN AT CMRCF FOR 30 DAYS OR MORE FROM JUNE 18, 2017, TO JUNE 18, 2020 (Covered by request No. 21).**

In response to the motion to compel production of the same, the Defendants objected on, among others, the grounds that the request was vague, overly broad and unduly burdensome, and

---

[4] To the extent that Defendants have previously raised in their responses to the interrogatories seeking the subject information other essentially boilerplate objections such as this discovery would be unduly burdensome, it is well-settled these types of objections do not meet the necessary burden of the party resisting such discovery. *See Itron, Inc. v. Johnston*, 2017 WL 11372352, at *3-4 (S.D. Miss. Aug. 17, 2017) ("... a party seeking to resist discovery ... still bears the burden of making a specific objection and showing that the discovery fails the proportionality calculation mandated by Rule 26(b) by coming forward with specific information. . . .").

sought irrelevant information in as much as it: provided no description of the requested documents other than a blanket "all medical reports" by "mental health professionals" of any inmates in lockdown for 30 days or longer for a three year period; was violative of the Health Insurance Portability and Accountability Act (HIPAA); and sought inmate medical records that were all previously, pursuant to MDOC direction, transported to the Rankin County Correctional Facility, and Defendants do not have custody of or access to same.

Plaintiff argues, in reply, that Defendant does, in fact, have custody of, or access to, the documents responsive to this request. Specifically, Plaintiff points to a contractual agreement between Plaintiff and Mississippi Department of Corrections ("MDOC"), which Plaintiff alleges provides Defendant with access and control of an inmate's medical records. The specific contract provision Plaintiff references is "that MDOC shall furnish to the Sheriff or the Warden, for and on behalf of the Sheriff, each Inmate's Institutional record (field jacket), medical record and such other records as the County through the Sheriff may request and/or MDOC has pertaining to the Inmate." For its part, Defendants contend that Plaintiff omits a critical component of the contractual agreement, Section 5.24 Records and Reports subsection (b) which states that "[a]ll Inmate records are to remain confidential and are not to be released without approval of MDOC, unless otherwise required by applicable laws, rules or regulations." Defs.' Memorandum Brief [110] at 6 (citing Exhibit G pg. 10)).

The court notes that under Fed. R. Civ. P. 34, "[a] party may serve on any other party a request within the scope of Rule 26(b)" to produce any designated document within the "responding party's possession, custody, or control." *Wilemon Foundation, Inc. v. Wilemon*, Civil Cause No.: 1:19-cv-136-GHD-DAS, 2021 WL 1649507, at *5 (N.D. Miss. Apr. 27, 2021). "If the producing party has the legal right or the practical ability to obtain the documents, then it is deemed

to have 'control,' even if the documents are actually in the possession of a nonparty." *Id.* (quoting *Ntakirutimana v. CHS/Cmty. Health Sys., Inc.*, No. CV L-09-114, 2011 WL 13135608, at *1 (S.D. Tex. June 28, 2011)) (other citations omitted). Further, the party seeking discovery must show that the other party has control over the material sought. *Monroe's Estate v. Bottle Rock Power Corp.*, No. 03-2682, 2004 WL 737463, at *10 (E.D. La. Apr. 2, 2004). "When determining the sufficiency of control of material for purposes of Rule 34, the nature of the relationship between the party and the non-party is the key." *Id.* (citing *Goh v. Baldor Electric Co.*, 1999 WL 20943 at *2 (N.D. Tex.)). Thus, courts should look at "whether the litigant has the ability to obtain the documents on request to a related party, either as a matter of law or as a matter of practical fact." *Id.*

As a general matter, when documents are available from a party, "it has been thought preferable to have them obtained pursuant to Rule 34 rather than subpoenaing them [pursuant to Rule 45]." *Ntakirutimana*, 2011 WL 13135608, at *2 (citing *Thomas v. IEM, Inc.*, 2008 WL 695230, at *2 (M.D. La. Mar. 12, 2008)). In other words, Rule 45 subpoenas are not meant to circumvent the regular discovery process under Rules 26 and 34. *Wilemon*, 2021 WL 1649507, at *5 (citing *Ntakirutimana*, 2011 WL 13135608, at *2).

Applying these legal principles to the issue at hand, I find that the contract language cited by Plaintiff is at least some support for her contention that Defendants could direct or at least request MDOC to provide the responsive documents to it, and I find the contract language cited by Defendants does not actually address the issue of access to the subject records. Instead, it concerns the confidentiality of such records and the requirement that MDOC approve any release of such records generally. In short, I don't find that the subject contract language of itself prohibits Defendants from even requesting of MDOC that certain medical records be released.

However, and more significantly, I find the requests seek private inmate medical information not relevant to any issue in this case. In short, there is simply no reason for Plaintiff to access non-party inmates' medical mental reports, nor has Plaintiff articulated any argument to the contrary. Rather, she has asserted only that she has reason to discover whether inmates in lockdown for 30 days or longer were, prior to COVID-related travel restrictions, afforded mental evaluations in compliance with the facility's segregation policy. In short, the Plaintiff's requests to compel production of all such medical records themselves does not seek the production of relevant evidence and is not reasonably calculated to lead to discovery of the same. It is, therefore, denied.

On the other hand, the Court notes that but for the fact that discovery in this case has now expired and there is an approaching trial date, Plaintiff might well be entitled to learn via a tailored interrogatory—and assuming the same could be ascertained in keeping with the proportionality it bears to the merits of the case—to know whether the Defendant had a mental evaluation performed in compliance with the applicable segregation policy, whenever—prior to COVID—an inmate was assigned to lockdown in excess of thirty days. Of course, as the matter stands, in order to propound such an interrogatory, discovery will have to be reopened for some period, and to accomplish that, one or more parties will have to seek and first obtain a trial continuance, which is a matter exclusively at the province of the district judge assigned to this case.

### III.   INTERROGATORY NO. 23 & REQUEST FOR PRODUCTION NO. 13

Interrogatory No. 23 and Request for Production No. 13 are reproduced below:

INTERROGATORY NO. 23: Please identify the facts surrounding any prior inmate suicides at Carroll County Correctional Facility from January 1, 2015 to the present. Include in your response: a. The name of the inmate involved; b. The date of the incident; c. The reason why the inmate was incarcerated; d. The correctional

staff that discovered the inmate (including the staff's contact information); e. The exact location in the facility where the inmate was discovered: f. Whether the inmate was assigned to administrative segregation, protective custody, disciplinary detention, management isolation or suicide watch; and g. Whether the inmate had made any suicidal gestures or ideations prior to his death.

REQUEST NO. 13: Please produce any documents pertaining in any way to an investigation of prior suicide(s) that occurred on the premises from January 1, 2015, to the present.

By way of her motion to compel, Plaintiff seeks information related to a suicide that apparently occurred at the Carroll County Correctional Facility on or about November 22, 2011. Defendants, meanwhile, argue, unpersuasively, that the motion should be denied with respect to Interrogatory 23 and Request for Production 13 because Plaintiff "seeks to compel records well outside the 18-month time frame suggested by the Court."

The court finds that the motion to compel information/documents regarding a suicide occurring in 2011 is without merit for the simple reason that Interrogatory 23 and Request for Production 13 specifically seek only such information/documents as concern suicides occurring since January 1, 2015.

**IT IS THEREFORE ORDERED** that the motion to compel [107] is denied.

**SO ORDERED** this 8th day of January, 2024.

/s/ Jane M. Virden
**UNITED STATES MAGISTRATE JUDGE**